# Appendix A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD PINEDO,<br><br>         Defendant. | Criminal No. 18-cr-24<br><br>**UNDER SEAL** |

### GOVERNMENT'S MOTION TO SEAL DEFENDANT'S
### PLEA AGREEMENT AND TO CLOSE THE COURTROOM FOR PLEA HEARING

Pursuant to Local Criminal Rule 49(e) and (f)(6), the United States moves the Court to seal the defendant's plea materials; to close the courtroom for a plea hearing tentatively scheduled for Monday, February 12, 2018, at 2:30 pm; and to grant the government leave to file this motion and its related documents under seal. As explained below, sealing the plea agreement and closing the courtroom for the plea hearing are necessary to further the government's compelling interest in preserving the integrity of an ongoing investigation, and no less drastic alternatives sufficient to protect that interest are available. The requested relief is especially appropriate because sealing will be necessary only for the limited duration required to complete certain investigatory steps.

### BACKGROUND

1.     Defendant Richard Pinedo (defendant) is a California resident who, from approximately 2014 through December 2017, provided online services designed to circumvent the security features of online payment processors, to include selling bank account numbers without authorization from the account holders.

2.     Discussions between the government and the defendant have culminated in a proposed plea agreement, under which the defendant will plead guilty to an Information charging him with identify fraud, in violation of 18 U.S.C. § 1028(a)(7). The agreement incorporates a

statement of the offense setting forth the factual basis for the guilty plea, which explains that the charge and accompanying plea are based on the defendant's having sold bank account numbers without authorization from the account holders to individuals, some of whom were located outside the United States. Some of these individuals used the unauthorized bank account numbers obtained from the defendant to circumvent the security measures of online payment processors. A copy of the signed plea agreement and statement of the offense are attached as Exhibit A.

3. The government recognizes that its investigation is the focus of intense public interest. As explained in the declaration of Supervisory Special Agent Francesco H. Corral (attached as Exhibit B), however, public disclosure of the defendant's guilty plea at this time could significantly compromise the government's ongoing investigation. Exh. B ¶¶ 5–8.

4. The defendant's guilty plea, if accepted, will result in the first criminal conviction arising from a particular facet of the Special Counsel's investigation, namely, a Russian-backed operation that used social media platforms, through fraud and deceit, to interfere with the U.S. political system, including the 2016 U.S. presidential election. Exh. B ¶ 4. The investigation is ongoing and includes pursuing leads from information related to the defendant's customers and their conspirators, some of whom are subjects and targets of the ongoing investigation. *Id.* ¶¶ 3-4.

5. The plea materials, including the statement of the offense, identify the defendant and his online service by name and describe the service in sufficient detail that customers would be highly likely to identify their connection to the defendant. Exh. B ¶ 7. The disclosure of the defendant's plea may therefore provide an opportunity for individuals of interest who are associated with the defendant, including the defendant's customers and their conspirators, to destroy or tamper with evidence. Exh. B ¶ 5. Destruction of evidence is more likely when, as is

the case here, many of the relevant individuals are located overseas and much of the evidence is electronic and accessible remotely through the internet. *Id*. ¶ 5.

6.     In addition, the disclosure of the defendant's plea may discourage individuals of interest, who are located in the United States and communicated with the defendant's customers and their conspirators, from speaking with investigators. Exh. B ¶ 6. When the investigation is a focus of intense public interest, as is the case here, such individuals are even less likely to cooperate with law enforcement officers. *Id*. ¶ 6. Publicity arising from a plea in high-interest circumstances is likely to discourage individuals from cooperating with investigators, either because of the prospect of criminal exposure or because they fear becoming the subject of media coverage themselves. *Id*. ¶ 6. Even where an individual of interest is willing to speak with investigators, the individual could potentially shape his or her statements in light of knowledge of the defendant's plea. *Id*. ¶ 6.

7.     Finally, many of the defendant's customers and their conspirators, some of whom are subjects and targets of the ongoing investigation, are located overseas in a jurisdiction (or jurisdictions) where the likelihood of seeking the individual's extradition to the United States is low. Exh. B ¶ 8. Any publicity relating to the defendant, or this particular facet of the investigation, will discourage those individuals from traveling to other countries. *Id*. ¶ 8.

## ARGUMENT

**THE CIRCUMSTANCES JUSTIFY A LIMITED-DURATION SEALING ORDER AND CLOSING OF THE COURTROOM FOR THE DEFENDANT'S PLEA PROCEEDINGS**

### A.     Plea Proceedings May be Sealed Upon A Sufficient Justification

"The [F]irst [A]mendment guarantees the press and the public a general right of access to court proceedings and court documents." *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991). In *Robinson*, the D.C. Circuit held that "this right of access . . . extends to plea

agreements," *id.*, and cited with approval decisions that had applied the right of access to "plea hearings" themselves, *see United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988); *see also In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986).[1]

The right of access established in *Robinson*, however, is not absolute. Rather, the "general presumption of access to plea agreements" can be overcome upon a showing that sealing the agreement serves a compelling government interest, that a substantial probability exists that the interest would be harmed absent sealing, and that "no adequate alternatives to closure . . . would adequately protect the compelling interest." 935 F.2d at 290 (internal quotation marks omitted). The court in *Robinson* also recognized that "it may well be sufficient to justify sealing a plea agreement" that releasing the "agreement may threaten an ongoing criminal investigation" or the safety of a cooperating "defendant and his family." *Id.* at 291.

Similar principles govern closure of the courtroom during a guilty plea hearing. Specifically, courtroom closure is permissible when it is necessary to protect a compelling interest of either the government or the defendant and is narrowly tailored to serve that interest. *See Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13-14 (1986); *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995). A closure order must be supported by findings demonstrating a "substantial probability" that the government interest at issue will be protected by sealing the courtroom and that "reasonable alternatives to closure cannot adequately protect" that interest. *Press-Enterprise Co.*, 478 U.S. at 14.

---

[1] In criminal cases, a "public trial right" also exists under the Sixth Amendment. *Presley v. Georgia*, 558 U.S. 209, 211–12 (2010) (per curiam). The Supreme Court has not decided whether that right extends to guilty-plea hearings or is "coextensive" with the First Amendment right recognized in decisions such as *Robinson, see id.* at 213. But the Court has made clear that the Sixth Amendment right belongs to "the accused," 558 U.S. at 212, and the defendant here informs the government that he has no objection to—and in fact supports—closing the courtroom for the plea hearing. This motion therefore raises no separate Sixth Amendment question.

**B.     The Circumstances Here Justify Sealing The Plea Agreement And Plea Proceedings For The Limited Period Necessary To Complete Investigatory Steps**

Under the above standards, sealing of the plea agreement and closure of the courtroom for the plea hearing are warranted in this case.

1.     Sealing is sought here to maintain the integrity and confidentiality of an ongoing investigation, a governmental interest that courts have consistently recognized to be compelling. *See Robinson*, 935 F.2d at 291; *accord United States v. Doe*, No. 15-50259, 2017 WL 3996799, at *5–*7 (9th Cir. Sept. 12, 2017) (identifying the avoidance of risks to "ongoing investigations" as a compelling interest that may justify sealing); *Haller*, 837 F.2d at 88 (same). The investigation at issue concerns a matter of utmost importance and sensitivity—efforts by a foreign government to interfere in the 2016 presidential election—and as such has garnered intense media attention.

2.     Absent sealing for a limited period, a substantial probability exists that public knowledge of the defendant's guilty plea will compromise the ongoing investigation. *See Robinson*, 935 F.2d at 290. Any revelation that the defendant has pleaded guilty to a criminal offense stemming from the investigation would result in immediate and widespread publicity. And as Supervisory Special Agent Corral explains in his declaration, such publicity is likely to provide an opportunity for the defendant's customers and their conspirators, some of whom are subjects and targets of the ongoing investigation, to destroy or tamper with evidence or otherwise seriously jeopardize the investigation. Exh. B ¶ 5; *cf. Robinson*, 935 F.2d at 291 (recognizing that fear of publicity may discourage cooperation but finding no such evidence on the facts there); *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 930 (D.C. Cir. 2003) (explaining, in the context of a national security investigation, that "[a] potential witness or informant may be much less likely to come forward and cooperate with the investigation if he believes his name will be made public"). Although the government is moving expeditiously to collect evidence relevant to

the investigation, news that the defendant has been charged with and pleaded guilty to a federal felony may provide an opportunity for defendant's customers and their conspirators, for example, to destroy or tamper with evidence or alter upcoming travel plans.

In that regard, the threat to the ongoing investigation here differs markedly from the circumstances in *Robinson*, where the D.C. Circuit found that disclosure of a plea agreement posed no such threat. 935 F.2d at 291–292. The information that the government sought to protect in *Robinson* was that the defendant had agreed to cooperate in an ongoing investigation into the drug-related activities of then-D.C. Mayor Marion Barry. But the defendant's cooperation had been widely publicized by the time of his guilty plea, including in newspaper articles that reported that he would "'cooperate' with the government regarding the Barry investigation" and that the government had discussed his cooperation at "a news conference." *Id.* The D.C. Circuit concluded that disclosure of the plea agreement's contents "could hardly have posed any additional threat to the ongoing criminal investigation," because it "would only have confirmed the public what was already validated by an official source." *Id.* at 292.

In this case, by contrast, the government seeks to protect sensitive information that has never reached the public domain. Simply put, public disclosure could prevent investigators from obtaining otherwise available evidence. That concern is of vital importance, because revealing the defendant's plea would likely cause the defendant's customers and their conspirators, some of whom are subjects and targets of the ongoing investigation located overseas, to destroy or tamper with evidence. *See* Exh. B ¶ 5.

The foregoing reasons justify not only the sealing of the plea agreement but also the closure of the courtroom for the entirety of the plea hearing. The hearing will necessarily reveal sensitive information about the investigation because the Federal Rules of Criminal Procedure require the

Court "to determine," among other things, "that there is a factual basis for the plea," Fed. R. Crim. P. 11(b)(3). As a result, the government must proffer to the Court "evidence from which a reasonable juror could conclude that the defendant [i]s guilty as charged." *United States v. Ahn*, 231 F.3d 26, 31 (D.C. Cir. 2000) (internal quotation marks and citation omitted). Recitation of that evidence at the hearing would therefore cause the same harm as publishing the statement of offense—that is, disclosure of the defendant's unlawful activity before the government can complete its investigation into his customers and their conspirators.

      3.      No adequate alternatives to the requested sealing would suffice to protect the government interest at stake. *See Robinson*, 935 F.2d at 290. The government has considered, for example, the possibility of sealing only the statement of offense recounting the facts that form the basis for the defendant's plea, as distinguished from the plea agreement itself. While partial sealing of that sort may suffice in some cases, *see, e.g.*, *Haller*, 837 F.2d at 87–88 (sealing one paragraph of plea agreement), that measure would not adequately protect the ongoing investigation here. The plea agreement alone still reveals the defendant as the individual pleading guilty and the charge to which he is pleading, and it identifies the prosecutors as lawyers in the Special Counsel's Office, whose investigation is being closely followed by the media. Disclosure of the plea agreement, even with redactions, would therefore trigger the type of widespread publicity that will alert subjects and targets of the investigation as to the existence and progress of this particular facet of the investigation into Russian interference with the 2016 election. *See* Exh. B ¶ 5. Similarly, closing the courtroom only during presentation of the factual basis for the plea, or airing the relevant facts in chambers, *cf. United States v. Alcantara*, 396 F.3d 189, 191 (2d Cir. 2005) (reversing guilty plea taken in robing room), would not adequately protect the government interests at stake because the plea materials, including the statement of the offense, identify the defendant and his online service

by name and describe the service in sufficient detail that customers would be highly likely to identify their connection to the defendant. *Id.* ¶ 7.

4.      Finally, the requested sealing of the plea agreement is especially appropriate because it will be of limited duration. The government is working expeditiously to complete the investigative steps that would be most directly jeopardized by public disclosure of the defendant's guilty plea proceedings. Once those steps are completed, the government will promptly return to the Court and move for public disclosure of the sealed plea agreement, as well as a transcript of the closed plea hearing. If the investigative steps are not completed within 30 days from the date of an order granting this motion, the government will at that time (or any earlier time required by the Court) submit a status report to explain any continued need for sealing.

C.      **The Procedural Steps Necessary To Permit Sealing Can Be Satisfied**

Before sealing a plea agreement, a court must follow certain procedural steps. *Robinson,* 935 F.2d at 289. Specifically, *Robinson* requires that: (1) the government file a written motion to seal, notice of which is entered in the public docket; (2) the Court promptly allow interested persons to be heard before ruling on that motion and entering a sealing order; (3) the Court articulate specific findings on the record demonstrating that the decision to seal is narrowly tailored and essential to preserving a compelling government interest; and (4) the Court place the fact that it has sealed the plea agreement on the docket and "make every effort to explain as much of its decision as possible on the public record to enable an interested person intelligently to challenge the decision." *Id.* at 289 & n.9. The court in *Robinson* further noted that, while notice of the government's motion to seal must be entered on the docket, "[t]he government may seek leave of the court to file under seal its written motion to seal along with the plea agreement itself, and any supporting documents, pending the disposition of the motion." *Id.*; *see also United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997).

In order to comply with these procedures, the Court should promptly cause notice of the government's motion to seal to be entered on the public docket (even though the motion itself would remain sealed, *see Robinson*, 935 F.2d at 289). *Robinson* addressed a situation in which the criminal case had a public docket that interested members of the public could consult. If the Court seals the docket created upon filing of the Information (as the government has requested), then no comparable public docket will exist in this case. To ensure compliance with *Robinson*, the Court should create a public docket that protects the integrity of the investigation—for example, by bearing the pseudonymous case name "*United States v. Doe*"—on which to enter notice of the government's motion to seal the plea agreement. *Robinson*, 935 F.2d at 289. The government does not understand *Robinson* to require that the docket name the Special Counsel's Office (or its attorneys) as the prosecuting authority, and such information would increase the risk that the investigation will be compromised before the Court has had a chance to rule on the government's motion to seal. Accordingly, the government requests that any public docket entry exclude additional information concerning the case or counsel at this time.[2]

For the foregoing reasons, the government respectfully requests that the Court grant its motion and, after entry of this motion on the public docket to provide notice to interested parties, order that the plea agreement be sealed, that the courtroom be closed for the plea hearing of

---

[2] Although *Robinson* did not indicate how long the opportunity to intervene must be afforded before the Court rules, the government suggests that it permit a two-day period—that is, until the day of the scheduled plea hearing—before ruling on this motion.

February 12, 2018, and that the government be granted leave to file this motion and the attached exhibits under seal. A proposed order accompanies this motion.

Respectfully submitted,

ROBERT S. MUELLER, III
Special Counsel

Dated: February 8, 2018                By: _____
                                       Jeannie S. Rhee
                                       L. Rush Atkinson
                                       Ryan K. Dickey
                                       The Special Counsel's Office