```
 1                    BEFORE THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2
      UNITED STATES OF AMERICA,      .
 3                                   .  Case Number 18-cr-24
                 Plaintiff,          .
 4                                   .
           vs.                       .
 5                                   .  Washington, D.C.
      RICHARD PINEDO,                .  Monday, February 12, 2018
 6                                   .  3:05 p.m.
                 Defendant.          .
 7    - - - - - - - - - - - - - - - - -


 8
                     TRANSCRIPT OF UNSEALED PLEA HEARING
 9               BEFORE THE HONORABLE DABNEY L. FRIEDRICH
                       UNITED STATES DISTRICT JUDGE
10
      APPEARANCES:
11
      For the Government:            JEANNIE SCLAFANI RHEE, AUSA
12                                   U.S. Department of Justice
                                     Special Counsel's Office
13                                   950 Pennsylvania Avenue Northwest
                                     Washington, D.C. 20530
14
                                     RYAN KAO DICKEY, ESQ.
15                                   U.S. Department of Justice
                                     Criminal Division
16                                   1301 New York Avenue
                                     Sixth Floor
17                                   Washington, D.C. 20005
                                     202-616-1509
18
      For the Defendant:            JEREMY LESSEM, ESQ.
19                                   Lessem, Newstat & Tooson, LLP
                                     3450 Cahuenga Boulevard
20                                   Unit 102
                                     Los Angeles, California 90068
21                                   818-582-3087

22    Official Court Reporter:       SARA A. WICK, RPR, CRR
                                     U.S. Courthouse, Room 4704-B
23                                   333 Constitution Avenue Northwest
                                     Washington, D.C. 20001
24                                   202-354-3284

25    Proceedings recorded by stenotype shorthand.
      Transcript produced by computer-aided transcription.
```

```
 1                     P R O C E E D I N G S
 2          (Call to order of the court.)
 3          THE CLERK:  Your Honor, this is criminal case number
 4   18-24, the United States of America versus Richard Pinedo.  The
 5   defendant is present.  On behalf of Pretrial Services is Shay
 6   Holman.
 7          Will counsel, please, approach the podium and identify
 8   yourselves for the record, as well as any additional parties at
 9   your table.
10          MR. DICKEY:  Good afternoon, your Honor.  Ryan Dickey
11   for the United States, and I'm joined by my colleague from
12   Special Counsel's Office, Jeannie Rhee.
13          THE COURT:  Good afternoon, Mr. Dickey.
14          MR. LESSEM:  Good afternoon, your Honor.  Jeremy
15   Lessem on behalf of the defendant, Mr. Richard Pinedo.
16          THE COURT:  Good afternoon, Mr. Lessem.  I understand
17   there's a motion for admission of you pro hoc vice.
18          MR. LESSEM:  There is, your Honor.
19          THE COURT:  Is there any objection?
20          MR. DICKEY:  No objection, your Honor.
21          THE COURT:  Fine.  The motion is granted.
22          MR. LESSEM:  Thank you.
23          THE COURT:  In addition, I have the motion for
24   sealing, which I have reviewed and granted.
25          MR. DICKEY:  Thank you, Judge.
```

 1          THE COURT:  Okay.  And I take it everyone who is in

 2    the courtroom, it is appropriate for them to be in?

 3          MS. RHEE:  Yes, your Honor.

 4          THE COURT:  Thank you.  All right.  I understand we

 5    are here for a plea.  Before we proceed any further, I would

 6    like the deputy clerk to administer the oath to the defendant.

 7          (Defendant placed under oath.)

 8          THE COURT:  Could I have the defendant and Mr. Lessem

 9    approach.

10       Mr. Pinedo, do you understand that you are now under oath

11    and that, if you do not answer my questions truthfully, you

12    could be prosecuted for perjury for making a false statement?

13          THE DEFENDANT:  Yes.

14          THE COURT:  The purpose of the hearing today is for

15    you to make an important decision, and that is to decide whether

16    you want to go to trial on the government's charges against you

17    or whether you want to plead guilty.

18       Before you make such a serious decision, it is important

19    that you understand everything that is going on and everything

20    that I explain to you.  If you do not understand something, tell

21    me, and I will try to explain it more clearly.  I will also let

22    you talk to your counsel about what we are discussing in this

23    hearing.

24       Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Would the government state the charges

2  against the defendant.

3          MR. DICKEY:  The defendant, Richard Pinedo, has been

4  charged in a criminal information with identity fraud in

5  violation of Title 18, United States Code, Section 1028(a)(7).

6          THE COURT:  Mr. Dickey, can you summarize the terms of

7  the plea agreement.

8          MR. DICKEY:  Yes, Judge, if you will give me just one

9  moment.

10     Mr. Pinedo is -- the plea agreement offers that in exchange

11  to his plea to the criminal information, which charges him with

12  identity fraud in violation of Title 18, United States Code,

13  Section 1028(a)(7), that the government would not -- will not

14  file any other charges against Mr. Pinedo.

15     It also includes, your Honor, a provision for restitution,

16  for forfeiture.  It lays out the maximum penalties, the rights

17  that Mr. Pinedo will be giving up by pleading guilty, and

18  outlines also his cooperation with the Special Counsel's Office.

19          THE COURT:  Thank you.  Mr. Lessem, do you agree that

20  those are the terms of the agreement?

21          MR. LESSEM:  I do agree, your Honor.

22          THE COURT:  And Mr. Pinedo, do you understand that

23  those are the terms of the agreement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Mr. Pinedo, how old are you?

1                   THE DEFENDANT:  Twenty-eight.

2                   THE COURT:  And how far did you go in school?

3                   THE DEFENDANT:  Up to associate's.

4                   THE COURT:  Associate's, what, college or --

5                   THE DEFENDANT:  Yeah, in computer science.

6                   THE COURT:  Okay.  Where were you born?

7                   THE DEFENDANT:  In Ventura.

8                   THE COURT:  And you're a United States citizen?

9                   THE DEFENDANT:  Yes.

10                  THE COURT:  In the last 48 hours, have you taken any

11      alcohol, drugs, or medicine that could affect your ability to

12      understand what you are doing by pleading guilty here today?

13                  THE DEFENDANT:  No.

14                  THE COURT:  Have you ever received any treatment for

15      any type of mental illness or emotional disturbance?

16                  THE DEFENDANT:  No.

17                  THE COURT:  Have you received a copy of the

18      information pending against you?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  And have you fully discussed the charges

21      and the case in general with your counsel?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  Did you read the written material that

24      you've received?

25                  THE DEFENDANT:  Yes.

1          THE COURT:  And did your attorney read it with you or

2  to you?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Are you satisfied with the services of

5  your lawyer in this case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you had enough time to talk with him?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And have you had enough time to discuss

10  this plea offer and whether you should accept it?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Mr. Pinedo, I want to explain to you

13  certain rights that you have in this matter, and I want to make

14  sure that you understand them.  Please listen carefully to what

15  I tell you in my questions, and let me know if there's anything

16  you do not understand.  If you need to talk to your lawyer, you

17  may do so, either here or in private.

18      Do you understand?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand that you have the right

21  to plead not guilty and have a trial in this case?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And if you were to plead not guilty, you

24  have a right to a jury trial.  That means 12 citizens of the

25  District of Columbia would sit over there in the jury box and

1    determine your guilt or innocence based on evidence presented in

2    this courtroom.

3         Do you understand your right to a jury trial?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand that, if you have a

6    trial, you have a right to be represented by your lawyer at that

7    trial and at every other stage of the proceedings?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand that, at a trial, you

10   would have the right, through your lawyer, to confront and

11   cross-examine any witnesses against you?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that, at a trial, you

14   would have the right to present your own witnesses and that you

15   would have the right to require or compel them to testify in

16   your defense?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand that, if there were a

19   trial, you would have the right to testify and present evidence

20   on your behalf if you wanted to but that you would not have to

21   testify or present any evidence if you did not want to?

22             THE DEFENDANT:  Yes.

23             THE COURT:  If you were to make a decision not to

24   testify at trial, you could request that the jury be told that

25   the decision not to testify cannot be held against you.

1          Do you understand that right?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Do you understand that, unless and until I

4     accept your guilty plea, you are presumed by the law to be

5     innocent, because it is the government's burden to prove your

6     guilt beyond a reasonable doubt and, until it does, you cannot

7     be convicted at trial?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Do you understand that, if you went to

10    trial and were convicted, you would have a right to appeal your

11    conviction to The Court of Appeals and to have a lawyer help you

12    prepare your appeal?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Do you understand that, by pleading

15    guilty, you are giving up all your rights to appeal, except for

16    the following:  You can appeal your conviction if you believe

17    that your guilty plea was somehow unlawful or involuntary or if

18    there is some other fundamental defect in the proceedings that

19    was not waived by your guilty plea?

20              THE DEFENDANT:  Yes.

21              THE COURT:  If you are unable to pay the costs of an

22    appeal, you may apply for leave to appeal in forma pauperis,

23    that is, without paying filing fees.  If you request appeal in

24    forma pauperis, the clerk of the court will prepare and file a

25    notice of appeal on your behalf.

1        THE DEFENDANT:  Yes.

2        THE COURT:  Under the terms of your agreement, you are

3   agreeing to waive the right to appeal the sentence in this case,

4   except to the extent that I impose a sentence that is above the

5   statutory maximum or guidelines range or if you assert that you

6   received ineffective assistance of counsel, in which case your

7   right to appeal would be limited to those issues.

8        THE DEFENDANT:  Yes.

9        THE COURT:  Under the terms of your agreement, you are

10   also agreeing to waive the right to bring a collateral challenge

11   against your conviction or sentence.  A collateral challenge is

12   a separate action brought after you are sentenced that

13   challenges the validity of your conviction or sentence.  Under

14   your agreement, you are waiving the right to bring such an

15   action, except to the extent such a motion is based on newly

16   discovered evidence or on a claim that you received ineffective

17   assistance of counsel.

18        THE DEFENDANT:  Yes.

19        THE COURT:  You are also reserving the right to seek a

20   reduction in your sentence if the United States Sentencing

21   Commission lowers the applicable sentencing range at a later

22   date, but you are waiving the right to appeal the denial of such

23   a motion.

24        THE DEFENDANT:  Yes.

25        THE COURT:  And finally, as a part of your agreement,

1    you are waiving any right to request records from any department

2    or agency of the United States pertaining to the investigation

3    or prosecution of this case.

4         Do you understand?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that, if you plead

7    guilty in this case and I accept your guilty plea, you will give

8    up all the rights I just explained to you because there will not

9    be any trial?

10              THE DEFENDANT:  Yes.

11              THE COURT:  So the parties have submitted a written

12   letter outlining the plea agreement.  Before we discuss the

13   terms of the agreement, let me ask the prosecutor, does this

14   plea agreement reflect the only plea agreement made to the

15   defendant in this case?

16              MR. DICKEY:  It does, Judge.

17              THE COURT:  Mr. Pinedo, do you have a copy of the plea

18   agreement?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Have you read it carefully?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Do you understand it?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And have you had a chance to talk to your

25   attorney about it?

1            THE DEFENDANT:  Yes.

2            THE COURT:  Mr. Pinedo, I'm going to ask counsel for

3    the United States to tell you and me what happened in this case.

4    I want you to listen very carefully, because when the prosecutor

5    is finished I'm going to ask you if everything he said is true.

6    If anything he says is not true or not accurate, I want you to

7    tell me.

8        Do you understand?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Mr. Dickey, can you, please, tell me and

11   the defendant what the government's evidence would show if this

12   case went to trial.

13           MR. DICKEY:  Yes, Judge.  Were this matter to go to

14   trial, the government's evidence would show the following beyond

15   a reasonable doubt:  That from approximately 2014 through

16   December of 2017, the defendant, Richard Pinedo, operated an

17   online service called Auction Essistance.  Through Auction

18   Essistance, Pinedo offered a variety of services designed to

19   circumvent the security features of large online digital payment

20   companies, including a large digital payments company

21   hereinafter referred to as "company 1."

22       Mr. Pinedo sold bank account numbers through interstate and

23   foreign commerce, specifically over the Internet.  Mr. Pinedo

24   obtained bank account numbers either by registering accounts in

25   his own name or by purchasing accounts in the names of other

1   people through the Internet.  Many of the bank accounts

2   purchased by Mr. Pinedo over the Internet were created using

3   stolen identities of U.S. persons.

4        Although Mr. Pinedo is not directly involved in the

5   registration of these accounts using stolen identities, he

6   willfully and intentionally avoided learning about the use of

7   stolen identities.

8        Company 1 required users to submit bank account numbers as

9   a means of verifying a user's identity.  To circumvent this

10  requirement, certain users registered for company 1's online

11  services with bank account numbers in the names of other people.

12  Mr. Pinedo sold users' bank account numbers over the Internet to

13  aid and abet and in connection with the scheme to defraud

14  company 1 by means of Internet communications in interstate and

15  foreign commerce.

16       After acquiring bank account numbers from Mr. Pinedo, users

17  linked the bank account numbers to their accounts with company 1

18  as if they were the real owners of the bank accounts.  Company 1

19  sought to verify the bank account numbers by making de minimis

20  trial deposits into the accounts and asking users to identify

21  the amount of those trial deposits.  Mr. Pinedo told users the

22  amounts of these trial deposits, thereby further aiding the

23  users in their scheme to circumvent verification processes by

24  company 1.

25       Mr. Pinedo frequently purchased bank account numbers from

1    an individual he knew to be outside the United States.

2    Similarly, based on IP addresses and other information,

3    Mr. Pinedo knew that many of the persons to whom he sold bank

4    account numbers were outside the United States.

5         In total, Mr. Pinedo knowingly transferred, possessed, and

6    used, without lawful authority, hundreds of bank account numbers

7    to aid and abet and in connection with the use of the wires and

8    interstate and foreign commerce to defeat security measures

9    employed by company 1.  Mr. Pinedo personally collected 10s of

10   thousands of dollars and more than $1,000 during a one-year

11   period through the sale of these bank account numbers.

12             THE COURT:  Mr. Pinedo, the statement of offense that

13   Mr. Dickey just read is before me, and I take it this is your

14   signature on the last page dated February 2nd, 2018.  Is that

15   correct?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Is what the prosecutor said true?  Did

18   you, in fact, do the things that he just said you did?

19             THE DEFENDANT:  Yes, it's true.

20             THE COURT:  Mr. Lessem, do you agree that the

21   government could prove all of the elements of the charged

22   offense beyond a reasonable doubt?

23             MR. LESSEM:  I do agree, your Honor.

24             THE COURT:  So Mr. Pinedo, you are agreeing to plead

25   guilty to one count of identity fraud in violation of 18 USC

1   Sections 1028(a)(7), (b)(1)(D), and (c)(3)(A).

2       Do you understand that on that count, identity fraud, you

3   are pleading guilty to an offense that carries a maximum

4   statutory sentence of 15 years in prison?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you understand that, in addition to

7   your sentence of imprisonment, I may sentence you to a maximum

8   term of three years of supervised release?

9           THE DEFENDANT:  Yes.

10          THE COURT:  This means that after you are released

11  from prison, if you are sentenced to prison, you will be on

12  supervision under conditions and rules with which you must

13  comply, and if you don't comply, you could be sent back to

14  prison.

15      Do you understand?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Do you understand that, in addition to or

18  in place of any sentence of incarceration I may impose on this

19  count, the count carries a maximum fine of $250,000?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that I may impose

22  mandatory restitution to compensate for any losses caused as a

23  result of the offense?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that, if you plead

1    guilty, you will be required to pay a special assessment of

2    $100?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Mr. Pinedo, Congress has created the

5    United States Sentencing Commission, which has issued guidelines

6    for judges to consider in determining the sentence in a criminal

7    case.  The Court is not bound by those guidelines but must

8    consider them.  The commission has set sentencing ranges for

9    specific offenses, and those ranges are contained in an advisory

10   guidelines manual.

11       While we here today may have some idea, based on your

12   criminal history and the nature of this offense, what your

13   sentencing range may be, nothing will be certain until the

14   probation officer submits his or her sentencing report.  I will

15   receive that report.  So will your attorney and the attorney for

16   the government, who will both have the opportunity to make

17   changes or to object to portions of it.

18       At the time of sentencing, I will hear from both attorneys

19   who can raise objections to any part of the report, and I will

20   determine what your advisory sentencing guideline range is.

21       Because the guidelines are advisory, the Court can impose a

22   sentence outside the guidelines range based on the factors set

23   forth in 18 USC Section 3553(a).  The Court can never, however,

24   sentence you to more than the maximum statutory period that I

25   explained earlier.

1          Have you and your attorney talked about the advisory

2     sentencing guidelines and how they might apply in your case?

3               THE DEFENDANT:  Yes.

4               THE COURT:  Mr. Lessem, have you had a chance to speak

5     with your client about how the guidelines work, and are you

6     confident that he understands them?

7               MR. LESSEM:  Yes, your Honor.

8               THE COURT:  Right now I can only offer an estimate as

9     to what your guidelines range will be.  I also want to make sure

10    that you understand that the actual sentence I impose may be

11    different from any estimate that your attorney or the government

12    thinks that may be.

13         Do you have any questions about that?

14              THE DEFENDANT:  No.

15              THE COURT:  With that said, here is my estimate:  The

16    parties have agreed that the base offense level in this case is

17    6.  The parties have agreed that there's an enhancement of six

18    levels based on the specific characteristics of the offense,

19    because the gain that resulted from the offense is between $40-

20    and $60,000.

21         The parties have agreed that there's an enhancement of two

22    levels based on the specific characteristics of the offense,

23    because a substantial part of the fraudulent scheme was

24    committed from outside the United States.

25         The parties have agreed that there's an additional

 1    enhancement of two levels based on the specific characteristics

 2    of the offense, because the offense involved identity theft.

 3         The government agrees that you are entitled to a two-level

 4    reduction if you accept responsibility for your actions, adhere

 5    to the plea agreement, and display acceptable conduct between

 6    now and sentencing.

 7         The government also agrees that you are entitled to an

 8    additional one-level reduction because you provided timely

 9    notice of your intent to plead guilty, saving the government

10    from the time and resources necessary to go to trial.

11         Based on these representations, I estimate, though I don't

12    know for sure, that your applicable guidelines offense level

13    will be a level 13.

14         Your plea agreement also states that you have no previous

15    criminal convictions that warrant criminal history reports.

16    Therefore, I estimate that you have zero criminal history

17    points.  This places you into criminal history category 1 of the

18    sentencing guidelines.  However, as I've stated, the United

19    States probation officer can discover additional convictions

20    that have not been disclosed in the plea agreement during the

21    presentence investigation, and if so, your criminal history

22    points may increase.

23         Do you understand?

24              THE DEFENDANT:  Yes.

25              THE COURT:  So in summary, based on all of this

1    information, I estimate that your applicable guideline offense

2    level will be a level 13, with a criminal history category of 1,

3    and according to the advisory sentencing guidelines, the

4    recommended sentence range for an offense level of 13 and a

5    criminal history category 1 is 12 to 18 months in prison.

6         The recommended fine is between $5,500 and $55,000.  Under

7    your plea agreement, you will have the right to request that I

8    do not impose any fine.

9         Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you also understand that, after I have

12   decided what guideline applies in your case, I may conclude that

13   a departure from the guideline range is appropriate, which may

14   make the advisory guideline sentence either more or less severe?

15   Do you understand?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you also understand that your plea

18   agreement provides that neither you nor the government will seek

19   any departure adjustment from the estimated sentencing guideline

20   range, except, perhaps, for cooperation, but that agreement does

21   not prevent me from deciding that a departure or variance is

22   appropriate.

23        Do you understand?

24             THE DEFENDANT:  Yes.

25             THE COURT:  With respect to cooperation, do you

1    understand that, if in your case the government files a motion

2    for a downward departure from your advisory guideline range for

3    your cooperation, that is their decision and only their decision

4    to make, and neither your lawyer nor I can force the government

5    to file such a motion?  Do you understand?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you also understand that I will make

8    the final decision on the motion?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that, if I sentence you

11   to a term of imprisonment, you will serve the full amount of

12   time to which I sentence you, with a possible reduction for good

13   time credit up to 54 days a year, and that you will not be

14   released early on parole?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that the offense to

17   which you are pleading is a felony offense and that, if your

18   plea is accepted and you are found guilty of that offense, then

19   such a finding may deprive you of valuable civil rights such as

20   the right to vote, the right to hold public office, the right to

21   serve on a jury, and the right to possess any kind of firearm or

22   ammunition?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Mr. Pinedo, has anyone, including your

25   attorney, the police, the prosecutor, the FBI, or any other

1    person you have come in contact with since your arrest, promised

2    or suggested to you that merely because you are pleading guilty

3    you are guaranteed a lighter sentence?

4            THE DEFENDANT:  No.

5            THE COURT:  Has anyone forced, threatened, coerced you

6    in any way into entering this plea agreement?

7            THE DEFENDANT:  No.

8            THE COURT:  Do you understand that the agreement

9    reached in this case resulted from negotiations between your

10    attorney and the government's attorney?

11            THE DEFENDANT:  Yes.

12            THE COURT:  Has anyone made any promises to you in

13    connection with your guilty plea, other than those contained in

14    the plea agreement or stated here in open court?

15            THE DEFENDANT:  No.

16            THE COURT:  Do you understand that at this time I do

17    not know what sentence I will impose in your case because I have

18    not heard from the lawyers, the probation office, or from you?

19            THE DEFENDANT:  Yes.

20            THE COURT:  Is there anything that you do not

21    understand about this proceeding or about your plea in this

22    case?

23            THE DEFENDANT:  No.

24            THE COURT:  Is there anything that you would like to

25    ask your lawyer or ask me before you make a decision about how

1    you would like to plead?

2              THE DEFENDANT:  No.

3              THE COURT:  Are you ready to make a decision about

4    whether you wish to enter a plea of guilty or whether you wish

5    to go to trial?

6              THE DEFENDANT:  Yes.

7              THE COURT:  What is your decision?

8              THE DEFENDANT:  Plead guilty.

9              THE COURT:  Are you entering this plea of guilty

10   voluntarily and of your own free will because you are guilty and

11   for no other reason?

12             THE DEFENDANT:  Yes.

13             THE COURT:  It is the finding of the Court in the case

14   of United States versus Richard Pinedo that the defendant is

15   fully competent and capable of entering an informed plea, that

16   the defendant is aware of the nature of the charges and the

17   consequences of the plea, and that the plea of guilty is a

18   knowing and voluntary plea supported by an independent basis in

19   fact containing each of the essential elements of the offense.

20       The plea is, therefore, accepted, and the defendant is now

21   adjudged guilty of Count 1 of the information, identity fraud,

22   in violation of 18 USC Sections 1028(a)(7), (b)(1)(D), and

23   (c)(3)(A).

24       I will now sign and date the waiver of jury trial form,

25   which you and your counsel and the government counsel have

1    signed, as well as the waiver of indictment.

2         I'm also going to set the sentencing date based on the

3    Court's calendar and the needs of the probation office, in

4    consultation with your counsel and counsel for the government.

5         May I hear from the parties?

6         MR. DICKEY:  Yes, Judge.  Given that there's an

7    ongoing investigation, if your Honor is amenable, we would

8    propose setting a status hearing, possibly in 60 days, for the

9    government and for the parties to submit a status update to your

10   Honor about where the case is at so that the sentencing could be

11   set after that.

12        THE COURT:  Okay.

13        MR. LESSEM:  Your Honor, from the defense, if the

14   Court is inclined to set a status conference that quickly, is

15   there a mechanism with this court where we could potentially

16   appear via phone in this court?  And the reason being that both

17   Mr. Pinedo and myself reside in California.

18        It doesn't appear to me, from talking to the government,

19   that there's going to be -- that they're going to be prepared to

20   sentence him in that time range.  So there could be several,

21   potentially, status updates before we actually have a sentencing

22   date.

23        THE COURT:  Okay.  Mr. Dickey, what's your position on

24   not having the defendant appear for a status conference?

25        MR. DICKEY:  The government has no objection to that,

1    your Honor.  We also wouldn't have any objection, if the Court

2    prefers, to filing of a joint status pleading or a letter that

3    notifies the Court, instead of actually having a hearing.

4         THE COURT:  Why don't we do this:  Rather than set the

5    status conference in 60 days, can the parties submit a joint

6    report enough time in advance of what would be the 60-day status

7    conference to determine whether we think that that's useful?

8         MR. DICKEY:  Yes, Judge.  14 days prior?

9         THE COURT:  That would be fine, which would be --

10   let's see.  Today is the 12th.  So you were envisioning a status

11   conference around, what, April 12th?

12        MR. DICKEY:  Yes, Judge, if that's appropriate.

13        THE COURT:  So can you file a joint status report by

14   March 29th?

15        MR. LESSEM:  Yes, your Honor.

16        MR. DICKEY:  Yes, your Honor.

17        THE COURT:  Okay.  Very well.  You may have a seat.

18        MR. LESSEM:  Thank you.

19        THE COURT:  I'm also in receipt of the Pretrial

20   Services Agency's report in which the Pretrial Services Agency

21   recommends that the defendant be released on personal

22   recognizance, surrender all passports, and report weekly by

23   phone to the Pretrial Services Agency.

24        Would counsel like to be heard on conditions of release?

25        MR. DICKEY:  Very briefly, your Honor.

1     Your Honor, the government would ask for standard

2     conditions, including that Mr. Pinedo not commit any other

3     offenses.

4         With respect to checking in with probation, your Honor, we

5     would ask for -- first, Judge, we are fine with him being

6     released on a personal recognizance bond.  The government is not

7     asking for him to be detained.  With respect to checking in, we

8     would ask that he check in once a week by phone.

9         We are also asking that there be a condition that there be

10    no contact with any of his customers, whether that's current or

11    former customers.

12        We would ask for a condition that Mr. Pinedo be responsive

13    to his defense counsel, Mr. Lessem.  We would also ask that he

14    notify the probation officer of any travel outside of the Santa

15    Paula area prior to travel.  And it's our understanding that he

16    does not have a passport, your Honor.  And so we would just ask

17    that he not obtain one or that, if he were to obtain one, that

18    he surrender it to probation.

19        THE COURT:  Very well.  Mr. Lessem?

20        MR. LESSEM:  There's no objection to those conditions

21    from the defense, your Honor.

22        THE COURT:  All right.  In light of the parties'

23    representations here, the Court finds that there is clear and

24    convincing evidence, based on your close supervision by law

25    enforcement and your continuing cooperation, that the defendant

1     is not likely to flee or pose a danger to the community and that

2     there are exceptional reasons why your detention would not be

3     appropriate in this case.

4          I will authorize your release, but I must also caution you,

5     Mr. Pinedo, about your conduct while on release.  I will sign

6     the bond form that will allow you to stay out of jail pending

7     sentencing, but I must caution you about your conduct while you

8     are on release.

9          As set forth in the Pretrial Services Agency's

10    recommendation, I adopt all the conditions set forth in there,

11    including that you live at your current address, which, I

12    assume, is 711 Fillmore Street, Santa Paula, California.  Is

13    that correct?

14              THE DEFENDANT:  It's 712.

15              THE COURT:  712.  Okay.

16         You report to Pretrial Services Agency weekly by phone.  I

17    understand that you do not have a passport, but you are not to

18    apply for any passport.

19         As the government requested, you shall have no contact with

20    customers in this case and be responsive to your defense

21    attorney, Mr. Lessem, and notify Pretrial Services Agency of any

22    travel.

23         Have I covered all the conditions?

24              MR. DICKEY:  Judge, we would also just ask that he be

25    ordered as a condition to be responsive to his defense counsel,

1   Mr. Lessem, if there are any requests that come in.  Oh, I'm

2   sorry, Judge.  I missed that.

3          THE COURT:  That's all right.  But did I miss anything

4   else?

5       I intend to adopt fully the recommendation of the Pretrial

6   Services Agency, with the additional recommendations that the

7   government made.

8          MR. DICKEY:  Thank you, Judge.

9          THE COURT:  Mr. Pinedo, I want you to understand that

10   the penalties for violating any of these conditions can be

11   severe.  If you fail to appear in the future for -- whether it's

12   sentencing or status conferences without permission of the

13   Court, you could be subject to a fine or imprisonment up to 10

14   years on top of your sentence for the offenses that you have

15   pled to.  Any term of imprisonment for your failure to appear

16   would be consecutive to the sentence received for any other

17   offense.

18       If you were to violate any of the conditions of your

19   release, your release could be revoked, and you could be

20   detained in prison until sentencing.  You might also be subject

21   to a separate prosecution for contempt of court.

22       If you are convicted of an offense committed while you are

23   on release, then in addition to the sentence imposed for that

24   offense, you could be sentenced up to 10 years' imprisonment,

25   and any terms of imprisonment for an offense committed while on

1    release would be consecutive to the sentence received for any

2    other offense.

3        All right.  Is there anything else that counsel thinks we

4    should address here today?  Pretrial Services, have I missed

5    anything?

6                MR. DICKEY:  Nothing for the government, Judge.

7                THE COURT:  Mr. Lessem?

8                MR. LESSEM:  No, your Honor.

9                THE COURT:  I need to sign the bond form.

10               MS. HOLMAN:  Yes, your Honor.

11               MR. LESSEM:  Just so we are clear, there's no progress

12   date that's been set, only the due date of March 29th?

13               THE COURT:  Correct; correct.  And depending on what

14   you two say in the joint status report, I may well set a status

15   conference.  But rather than put a date on the calendar, let's

16   wait and see how things progress and what makes the most sense,

17   particularly since you are in L.A.

18               MR. LESSEM:  Okay.  Thank you.

19               THE COURT:  One other thing.  You all did note the

20   error in the plea agreement?  We've got that initialed; right?

21               MR. DICKEY:  Yes, Judge.  Thank you for catching that.

22               THE COURT:  That was a catch of my able law clerk.

23   Thank you.

24               MR. DICKEY:  Thank you.

25       (Defendant sworn to abide by conditions of release.)

1          THE COURT:  Counsel, one last thing.  The marshals are

2     going to take him back just to process directly from here.  Do

3     you have any questions or concerns?

4          MR. LESSEM:  No.  I understand the process.  Thank

5     you.

6          THE COURT:  Thank you.

7        (Proceedings adjourned at 3:38 p.m.)

8

9     - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

10

11              CERTIFICATE OF OFFICIAL COURT REPORTER

12

13          I, Sara A. Wick, certify that the foregoing is a

14     correct transcript from the record of proceedings in the

15     above-entitled matter.

16

17

18

19     /s/ Sara A. Wick                    February 17, 2018

20     SIGNATURE OF COURT REPORTER          DATE

21

22

23

24

25