## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICHARD PINEDO,**<br><br>**Defendant.** | **Criminal No. 1:18-cr-24 (DLF)** |

### GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in connection with the sentencing of Richard Pinedo scheduled for October 10, 2018. Mr. Pinedo pleaded guilty on February 12, 2018 to one count of identify fraud, in violation of 18 U.S.C. §§ 1028(a)(7), (b)(1)(D), and (c)(3)(A).[1] As an initial matter, the government agrees with the United States Probation Office that Mr. Pinedo's sentencing guidelines are properly calculated at a Total Offense Level of 13, Criminal History Category I, with a recommended guideline range of 12–18 months of incarceration.[2] The

---

[1] Title 18, United States Code, Section 1028(a)(7) provides: "Whoever, in a circumstance described in section (c) of this section . . . (7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law . . . shall be punished as provided in subsection (b) of this section." Section (b)(1)(D) provides: "The punishment for an offense under subsection (a) of this section is — (1) except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 15 years, or both, if the offense is . . . (D) an offense under paragraph (7) of such subsection that involves the transfer, possession, or use of 1 or more means of identification if, as a result of the offense, any individual committing the offense obtains anything of value aggregating $1,000 or more during any 1-year period[.]" Section (c)(3)(A) provides: "The circumstance referred to in subsection (a) of this section is that . . . (3) either — (A) the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means[.]"

[2] Section 2B1.1(a)(2) of the sentencing guidelines established a base offense level of six. Mr. Pinedo's offense level must be increased by six levels because the offense caused a loss between $40,000 and $95,000, pursuant to § 2B1.1(b)(1)(D); by two more levels because a substantial part of the fraudulent scheme was committed from outside the United States, pursuant to § 2B1.1(b)(10); and by another two levels because the offense involved trafficking of

applicable guideline range is in Zone C of the Sentencing Table, under which the guidelines recommend either imprisonment or a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term specified in the guideline range be satisfied by imprisonment. U.S.S.G. § 5C1.1(d). The government does not take a position with respect to a particular sentence to be imposed. Instead, the government sets forth its view of the nature of the offense and offender. *See* 18 U.S.C. § 3553(a).

Congress, in criminalizing identity theft, characterized the offense as "a critically important crime." 144 Cong. Rec. H9993-01, H9996. The provision violated by Mr. Pinedo, subsection (a)(7), was added to 18 U.S.C. § 1028 as part of the Identity Theft and Assumption Deterrence Act of 1998. Pub. L. No. 105-318, 112 Stat. 3007. The legislative history reflects that lawmakers recognized the "thousands of Americans victimized by this conduct every day" as well as the "far-ranging emotional and personal financial damage [wreaked] on its victims." *Id*. at H9995. One legislator noted the following: "[W]ith the growth of information that can be found on the Internet, identity thieves don't need an actual document. They can go on-line and find or purchase . . . the key pieces of information to unlocking the door to your personal financial history." *Id*. at H9997. The offense committed by Mr. Pinedo encapsulates these concerns: identity fraud on a large scale, committed remotely through the ease of the internet, with real-life damage inflicted on scores of innocent victims.

---

unauthorized access devices, the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, and the possession of five or more means of identification that unlawfully were obtained by the use of another means of identification, pursuant to § 2B1.1(b)(11).

For more than three years, beginning in 2014 and continuing through December 2017, Mr. Pinedo sold hundreds of real persons' bank account numbers to anonymous customers on the internet. Statement of Offense ("SOF"), ECF No. 13 at ¶¶ 1, 6. He intended to help his customers circumvent the security protocols of a large digital payment company. *Id*. at ¶¶ 1, 3–4. In doing so, however, Mr. Pinedo victimized not only the company and the individuals whose bank account numbers he sold, but he recklessly enabled other criminal activity that may have otherwise been prevented.

Mr. Pinedo sold hundreds of bank account numbers belonging to real people, and he did so for personal financial gain. SOF at ¶¶ 2, 6. He obtained the bank account numbers by purchasing accounts in the names of real people over the internet. *Id*. at ¶ 2. Though Mr. Pinedo did not personally steal the victims' bank account numbers in the first instance, *id*., he contributed to the demand for stolen identities on the black market. That he sold his own bank account numbers early on should serve as no mitigation, *id.*, because the damage he caused to his own credit and reputation he then inflicted on scores of victims. And he did so purely for personal financial gain. Mr. Pinedo collected tens of thousands of dollars, somewhere between $40,000 and $95,000, through the sale of these bank account numbers. *Id*. at ¶ 6.

Moreover, in helping his customers circumvent the security protocols of a digital payments company, Mr. Pinedo recklessly disregarded fraudulent activity committed by his customers. These security protocols were designed to deter fraud, reduce theft, and generally protect the integrity and reliability of financial networks. By providing stolen bank account numbers to his customers, some of whom had been banned from the network, Mr. Pinedo helped them to anonymously access a financial network that allowed them to transact with U.S. persons and companies. SOF at ¶¶ 3–4.

At the same time, the government recognizes that since being confronted by law enforcement, Mr. Pinedo readily admitted his own misconduct and provided significant assistance to the government in its own investigation of the facts surrounding the identity theft. For example, at the government's request, Mr. Pinedo promptly flew to the District of Columbia, answered questions posed by the government, and acknowledged his criminal conduct. He explained how he obtained the account numbers later sold for profit and provided the government with access to records identifying buyers of the accounts. Mr. Pinedo's prompt acceptance of responsibility saved the government significant time and resources in the investigation.

Dated: September 26, 2018

                                                        Respectfully submitted,

                                                        ROBERT S. MUELLER III
                                                        Special Counsel

By:           /s/ *Ryan K. Dickey*
                                                        Jeannie S. Rhee
                                                        L. Rush Atkinson
                                                        Ryan K. Dickey
                                                        U.S. Department of Justice
                                                        Special Counsel's Office
                                                        950 Pennsylvania Avenue NW
                                                        Washington, D.C. 20530
                                                        Telephone: (202) 616-0800

                                                        *Attorneys for the United States of America*