# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**RICHARD PINEDO,**<br><br>**Defendant.** | **Criminal No. 1:18-cr-24 (DLF)** |

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The government, through its undersigned attorneys, submits this supplemental memorandum pursuant to the Court's order of October 4, 2018, which directed the parties to address whether section 2B1.1(b)(2)(A)(i) of the U.S. Sentencing Guidelines applies given the number of victims in this case. Section 2B1.1(b)(2)(A)(i) calls for a two-level enhancement if the offense involved 10 or more victims. U.S.S.G. 2B1.1(b)(2)(A)(i).

Mr. Pinedo has admitted to selling hundreds of bank account numbers to customers through an online website he operated. (ECF No. 13, ¶ 6). The statement in the Government's Sentencing Memorandum that "Mr. Pinedo sold hundreds of real persons' bank account numbers to anonymous customers on the internet" (ECF No. 24, at 3) was intended to convey the sales volume admitted by the defendant in his plea, not the number of affected persons.

These bank account numbers allowed purchasers to circumvent security measures employed by online merchants and payment processors. To the government's knowledge, buyers could not access the accounts and could not see bank activity directly, including the size of the trial deposits. Instead, Mr. Pinedo would relay the relevant activity (i.e., the size of the trial deposits by an online merchant or payment processor) to the buyers by email; the buyer would then be able

to satisfy the online merchant's or payment processor's security check by confirming the size of the trial deposit.  (ECF No. 13, ¶ 3).[1]

Based on the government's investigation, Mr. Pinedo operated his scheme from approximately 2014 through 2017.  During 2014 and 2015, Mr. Pinedo sold bank account numbers opened in his own name.  (ECF No. 13, ¶ 2; ECF No. 25, at 4).  Ultimately, however, Mr. Pinedo's credit rating degraded to the point that he could no longer open any accounts.  At that time, Mr. Pinedo began to purchase bank account numbers from third-party sellers, which he resold at a higher price through his website.  (ECF No. 13, ¶¶ 2, 5).

The government's investigation determined that some of the bank account numbers Mr. Pinedo bought and resold were for accounts opened in the names of U.S. persons who appeared to be the victims of identity theft.  For example, the investigation determined that eighteen bank accounts connected to this scheme were opened at a single financial institution in the name (and using the social security number) of a single U.S. victim living in North Carolina.  Similarly, the investigation determined that twenty-one bank accounts were opened at a single financial institution in the name (and using the social security number) of a second U.S. victim living in Las Vegas, and ten bank accounts were opened at the same financial institution in the name of a third U.S. victim living in Texas.  Moreover, records suggest that some accounts were sold multiple times to bypass security measures (as evidenced by multiple trial balances).[2]

---

[1] According to Mr. Pinedo, on many occasions he himself did not have direct access to the bank accounts and instead received the information from an "upstream" seller, from whom he bought the account numbers and resold for a profit.  Mr. Pinedo would receive the relevant information by email or chat and then forward that information to the end purchaser.

[2] Due to incomplete records, it is unclear if all of these accounts were sold to and resold by Mr. Pinedo, or whether the seller upstream to Mr. Pinedo sold them to multiple people.

For some accounts, the government has not been able to identify the relationship of the "account holder" (i.e., the person in whose name the account was opened) to the scheme.  For example, one financial institution could not produce records related to some of the accounts in question.[3]  For others, the accounts show activity besides the "trial balance" activity connected to verification processes used by merchants and payment processors; it is unclear if the account holders were complicit in the scheme (such as Pinedo was when he sold accounts in his own name) or the victims of identity theft.

For these reasons, while the evidence establishes Mr. Pinedo sold more than ten or more bank accounts, the current record does not establish that Mr. Pinedo's actions involved ten or more victims, as defined by Section 2B1.1(b)(2)(A)(i).

Dated: October 9, 2018

Respectfully submitted,

ROBERT S. MUELLER III
Special Counsel

By:        /s/ *L. Rush Atkinson*
Jeannie S. Rhee
L. Rush Atkinson
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorneys for the United States of America*

---

[3] The government believes these accounts were flagged as fraudulent while still being processed for opening; therefore, while a bank account number was issued, they were never formally opened at the institution, and the account holder information was purged as a security measure.